1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10    JOHN Y. YANG,                        )    No.  ED CV 04-958-PJW
                                           )
11                    Plaintiff,           )
                                           )
12              v.                         )    MEMORANDUM OPINION AND ORDER
                                           )
13    JO ANNE B. BARNHART,                 )
      COMMISSIONER OF THE SOCIAL           )
14    SECURITY ADMINISTRATION,             )
                                           )
15                    Defendant.           )
      _____)

16

17                                    I.

18                                INTRODUCTION

19          After Plaintiff was denied benefits by Defendant Social Security

20    Administration (hereinafter the "Agency") he filed this appeal seeking

21    to overturn the Agency's decision.  For the following reasons, the

22    Agency's decision is reversed and the case is remanded for further

23    proceedings.

24                                    II.

25                      SUMMARY OF FACTS AND PROCEEDINGS

26          Plaintiff was born on June 5, 1957 and was 46 years old on the

27    day of the administrative hearing.  (Administrative Record ("AR") 29.)

28    He has a fifth-grade education and has past relevant work as a

1   windmill assembler, housekeeper, cleaner, and gardener.  (AR 106.)  In

2   March 2002, he filed an application for social security benefits,

3   alleging he was disabled as of September 2001 due to lower back pain.

4   After Plaintiff's claim was denied by the Agency, he requested and was

5   granted a hearing before an Administrative Law Judge ("ALJ").

6        On July 15, 2003, the ALJ held a hearing, in which Plaintiff

7   appeared with counsel and testified.  (AR 27-65.)  The ALJ also heard

8   testimony from a vocational expert.  (AR 58-63.)  On May 20, 2004, the

9   ALJ issued a decision denying Plaintiff's claim for benefits.  (AR 12-

10  24.)  The ALJ analyzed Plaintiff's case under the five-step sequential

11  evaluation procedure mandated by the regulations.  At step one, he

12  determined that Plaintiff had not worked during the period of claimed

13  disability.  (AR 13.)  At step two, he concluded that Plaintiff

14  suffered from lumbar disc and joint disease, radiculopathy of the left

15  leg, and allergic rhinitis, all of which, alone or in combination,

16  were severe.  (AR 17.)  At step three, the ALJ found that Plaintiff's

17  impairments did not meet or equal any of the Listings.  (AR 17.)  The

18  ALJ concluded that Plaintiff retained the ability to perform light

19  work, with certain limitations, e.g., not climbing ladders.  (AR 18.)

20  The ALJ found that Plaintiff's testimony that he could not work was

21  not credible.  (AR 21.)  The ALJ also found that Plaintiff's treating

22  physician's opinion that Plaintiff could not perform sedentary work

23  was not supported by the medical records and was inconsistent with the

24  opinions of the examining and consulting doctors.  (AR 19-20.)  As a

25  result, the ALJ rejected the treating physician's opinion and accepted

26  the opinions of the other doctors that Plaintiff could perform light

27  work.  (AR 19-22.)

28

2

1    At step four, the ALJ determined that Plaintiff could perform his
2    prior work as a housekeeper and cleaner.  (AR 23.)  As such, the ALJ
3    concluded that Plaintiff was not disabled.  (AR 23-24.)

4    Plaintiff appealed the ALJ's decision, but the Appeals Council
5    affirmed it.  Plaintiff then filed suit in this Court, seeking an
6    order reversing the Agency's denial of his disability claim.

7                                III.

8                               ANALYSIS

9    A.   Standard of Review

10   "Disability" under the applicable statute is defined as the
11   inability to perform any substantial gainful activity because of "any
12   medically determinable physical or mental impairment which can be
13   expected to result in death or which has lasted or can be expected to
14   last for a continuous period of not less than twelve months."  42
15   U.S.C. § 1382c(a)(3)(A).  The Court may overturn the ALJ's decision
16   that a claimant is not disabled only if the decision is not supported
17   by substantial evidence or is based on legal error.  *See Magallanes v.*
18   *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

19   Substantial evidence "'means such relevant evidence as a
20   reasonable mind might accept as adequate to support a conclusion.'"
21   *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison*
22   *Co. v. NLRB*, 305 U.S. 197, 229 (1938).)  It is "more than a mere
23   scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d
24   599, 601 (9th Cir. 1998), and "does not mean a large or considerable
25   amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

26   "The Court must uphold the ALJ's conclusion even if the evidence
27   in the record is susceptible to more than one rational
28   interpretation."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

                                  3

599 (9th Cir. 1999).  Indeed, if the record evidence can reasonably support either affirming or reversing the Agency's decision, the Court must not substitute its judgment for that of the ALJ.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the ALJ committed error but the error was harmless, reversal is not required.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)(applying the harmless error standard).

B.   The ALJ's Rejection of The Treating Physician's Opinion

Plaintiff alleges that the ALJ erred when he rejected the treating doctor's opinion that Plaintiff could not perform sedentary work in favor of the non-treating doctors' opinions that Plaintiff could perform light work.[1]  As set forth below, the ALJ's reasons for rejecting the treating physician's opinion are not sufficient and remand is required for further proceedings.

In general, a treating physician's opinion as to the nature and severity of an impairment will be given controlling weight if it is well-supported by objective medical evidence and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 416.927(d)(2).  Where the treating physician's opinion is contradicted by the opinion of a non-treating physician, the ALJ may disregard the treating physician's opinion provided the ALJ makes findings setting forth specific, legitimate reasons for doing so

---

[1]   The treating doctor concluded that Plaintiff could lift less than 10 pounds; stand and walk for only two hours a day; sit for two hours a day, assuming he could change positions every 30 minutes; and stand for 20 minutes before changing positions.  (AR 199-200.)  In addition, he opined that Plaintiff was unable to twist, stoop, or crouch.  (AR 200.)

that are based on substantial evidence in the record.  *Magallanes*, 881
F.2d at 751.

The ALJ discounted the treating physician's opinion that
Plaintiff was so limited by his back pain that he could not even
perform the physical requirements of sedentary work because:

1.   The treating physician's opinion was inconsistent with the
     opinions of the board certified examining physician and the
     state agency physicians, one of whom was also board
     certified.

2.   The laboratory findings did not support the treating
     physician's opinion.

3.   The treating physician's treatment notes were sketchy and
     incomplete and did not support his opinion.

4.   Plaintiff's treatment was conservative.

(AR 19.)

i.   Specialist vs. non-specialist

The ALJ rejected the treating doctor's opinion, in part, because
it was contradicted by the non-treating doctors' opinions, two of whom
were specialists, i.e., board certified in orthopedics and internal
medicine, and the treating doctor was not board certified in any
specialty.  In general, that may be a legitimate reason to give more
weight to the non-treating doctors.  20 C.F.R. § 404.1527 ("We
generally give more weight to the opinion of a specialist about
medical issues related to his or her area of specialty than to the
opinion of a source who is not a specialist"); *see also Smolen v.
Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); and *Bunnell v. Sullivan*,
912 F.2d 1149, 1153 (9th Cir. 1990), *aff'd on reh'g*, 947 F.2d 341 (9th

5

1    Cir. 1991)(en banc).  As set forth below, however, there are problems

2    with applying that rule to this case.

3         The first problem is that, though the examining physician is a

4    board certified orthopedist--the specialty relevant to diagnosing and

5    treating back pain--the consulting doctor is a board certified

6    internist.  (AR 128, 186.)  An internist specializes in diagnosis and

7    treatment of diseases.  *See* Meriam-Webster.com/dictionary (internist

8    and internal medicine).  Thus, it appears that the consulting

9    physician's expertise is not related to back pain and back injuries

10   and, therefore, should not have been given greater weight than the

11   treating physician.

12        The second problem with applying the general rule giving

13   deference to specialists over generalists in this case is that it

14   collides with the treating physician rule.  Thus, we have competing

15   rules in play: one says that the treating physician's opinion should

16   be granted deference, the other says that the specialist's opinion

17   should be granted deference.  There is very little in the case law to

18   guide the Court as to which rule should be given priority here.  *See*

19   *e.g., Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996)(overruling

20   ALJ's rejection of treating physician's opinion because non-treating

21   physician who disagreed with treating physician was a specialist).

22   The Court notes that the examining physician performed various range

23   of motion, straight leg raising, and strength tests to determine

24   Plaintiff's condition (AR 187-88), which supports the ALJ's reliance

25   on the examining doctor's opinion.  On the other hand, the treating

26   physician treated Plaintiff over a four-year period and, clearly,

27

28

1 would have been in the best position to know the extent of Plaintiff's
2 impairment.[2]

3          ii.   The lab tests

4      The ALJ also rejected the treating physician's opinion because,
5 he concluded, the "laboratory findings discussed above" did not
6 support the treating physician's opinion.  (AR 19.)  The Court finds
7 that, though this could be a legitimate reason for discounting the
8 treating physician's opinion, it is not supported by substantial
9 evidence in this record.

10     In the first place, there was only one lab test discussed by the
11 ALJ in his decision.[3]  This was a TB test performed in January 2003
12 and, presumably, had nothing to do with the treatment of Plaintiff's
13 back pain.  (AR 15, 209.)  Thus, the ALJ's rejection of the treating
14 physician's opinion based in part on the inconsistency between the TB
15 test and the doctor's opinion is not supported by substantial evidence
16 in the record.  Even assuming that the ALJ simply overlooked the fact
17 that he had not listed the other lab tests in his decision, the other
18 tests do not support the ALJ's conclusion, either.  There were only
19 three other lab test results in the medical record--blood tests
20 performed in July 2000, March 2002, and January 2003.  (AR 174, 175,

21 _____

22     [2]  The Court also notes that the examining and consulting
physicians did not have the benefit of the treating physicians
23 residual functional capacity assessment at the time they rendered
their opinions, which was not competed until months after they did
24 their work.  (AR 145-54, 176-83, and 186-89.)  In this form, the
treating doctor laid out in black and white what he believed Plaintiff
25 was capable of doing.  (AR 199-201.)  The Court is not convinced that
these doctors would have arrived at the same conclusions had they seen
26 the treating doctor's opinion first.

27
     [3]  The Court distinguishes between lab tests and MRIs, CT scans,
28 and x-rays, and assumes the ALJ does also.

1    and 208.)  Again, these, presumably, had nothing to do with

2    Plaintiff's back pain and, therefore, even were the Court to consider

3    them, they would not help the Agency in this appeal.

4                    iii. <u>Sketchy and incomplete records</u>

5          Next, the ALJ concluded that the treating physician's treatment

6    records were sketchy and incomplete and did not support the treating

7    physician's opinion.  (AR 19.)  Though this would be a legitimate

8    reason for rejecting a treating physician's opinion, it is not

9    specific enough to withstand scrutiny.  *See Embrey v. Bowen*, 849 F.2d

10   418, 421-22 (9th Cir. 1988).  The ALJ is not at liberty to simply

11   summarily conclude that a doctor's records do not support the doctor's

12   opinion.  The ALJ is tasked with specifying what records he is

13   referring to and why they do not support the opinion.  As the Ninth

14   Circuit explained in *Embrey*:

15         To say that medical opinions are not supported by sufficient

16         objective findings or are contrary to the preponderant

17         conclusions mandated by the objective findings does not achieve

18         the level of specificity our prior cases have required, even when

19         the objective factors are listed seriatim.  The ALJ must do more

20         than offer his conclusions.  He must set forth his own

21         interpretations and explain why they, rather than the doctors',

22         are correct.

23   *Id.*

24         In the case at bar, the treating physician's treatment records

25   run for about 30 pages in the record, consisting primarily of

26   treatment notes.  (AR 156-175, 203-214.)  In a word, most of the

27   doctor's notes are unreadable.  They are hand-written in scrawl and it

28   is practically impossible to decipher them.  (AR 162, 164, 166, 167,

                                    8

1   168, and 204.)  Even so, for the ALJ to reject the treating doctor's

2   opinion because it was not supported by his treatment notes requires

3   the ALJ to do more than just say so.  He must set forth which

4   particular notes run counter to the doctor's opinion and explain why

5   he thinks so.

6          iv.  <u>Conservative treatment</u>

7          Finally, the ALJ found that the treating doctor treated Plaintiff

8   conservatively, which suggested to the ALJ that the treating doctor

9   did not really believe that Plaintiff was disabled.  (AR 19.)  Though

10  this may be a specific and legitimate reason for rejecting a treating

11  physician's opinion,[4] it is not supported by substantial evidence in

12  this record.

13         The record shows that Plaintiff was treated with several potent

14  drugs to alleviate his pain, including Tylenol #3 with codeine.  (AR

15  47, 158.)  He also underwent physical therapy (AR 133-37), and

16  epidural injections (AR 144).  Finally, Plaintiff had surgery on his

17  neck to eliminate swollen glands, though they may not have been

18  related to his back pain.  Thus, it does not seem apparent that

19  Plaintiff's treatment was conservative.

20         The only reference to conservative treatment the Court could find

21  in the record was in a note by a physician's assistant in March 2000,

22  that Plaintiff "prefer[red]" conservative treatment.  (AR 144.)

23  Neither the Agency nor the ALJ has suggested what more radical

24  treatment would have been appropriate, i.e., back surgery.  None of

25

26         [4]  A claimant's election to choose conservative treatment is
    normally raised in the context of a credibility determination.  *See*
27  *e.g.* Johnson v. Shalala, 60 F.3d 1428, 1433-34 (9th Cir. 1995)
    (upholding ALJ's finding that claimant's subjective pain testimony was
28  not credible in part because she elected conservative treatment).

1   the doctors, the treating doctor or the non-treating doctors,

2   recommended surgery.  According to Plaintiff, the epidural injections

3   he received in 1995 and 1996 did not resolve his back pain and caused

4   headaches.  (AR 144.)  Thus, it appears that additional epidural

5   injections were not warranted, either.  For these reasons, the Court

6   cannot conclude on this record that Plaintiff's "conservative" course

7   of treatment supports the ALJ's decision to reject the treating

8   physician's opinion.

9                    v.   Conclusion

10          In the end, the Court concludes that, of the four reasons cited

11  by the ALJ for rejecting the treating physician's opinion, three of

12  them are either not supported by the record or are not specific enough

13  to warrant affirmance.  The remaining reason cited by the ALJ--that

14  the examining physician was a specialist and the treating physician

15  was not--though a valid reason *per se* is not enough to win the day

16  here.  It is not clear whether the ALJ would have or should have

17  rejected the treating physician's opinion for this reason alone.

18  Further, it is not clear whether the specialist would have arrived at

19  the same conclusion he did had he first read the treating physician's

20  residual functional capacity determination in which the treating

21  physician opined that Plaintiff was severely limited.  For these

22  reasons, the Court concludes that remand is necessary to allow the ALJ

23  to determine whether, in light of the Court's finding that three of

24  the four reasons given for rejecting the treating physician's opinion

25  are not warranted and the fourth is questionable, the treating

26  physician's opinion should be rejected in this case.

27

28

10

C.   <u>The ALJ's Analysis Of Plaintiff's Complaints Of Depression Was</u>
     <u>Not Erroneous, But Plaintiff May Present Further Evidence On This</u>
     <u>Issue On Remand</u>

     When Plaintiff filed his application for benefits, he contended only that he suffered from back pain.  (AR 105.)  When he testified at the administrative hearing, he told the ALJ that the only thing that prevented him from working was his back pain.  (AR 43.)  Now, he complains on appeal that the ALJ erred when he failed to consider Plaintiff's depression.  Though the ALJ had an obligation to consider all of Plaintiff's ailments in assessing disability, even ones not specifically raised by Plaintiff or his counsel, the Count concludes that the ALJ did not err in failing to consider Plaintiff's depression here.

     Plaintiff's treatment records for his depression run three pages long and appear to cover a single visit to a psychologist in June 2003, more than a year after he filed his application for benefits. (AR 196-98.)  Further, before the Agency, Plaintiff gave every indication that his depression was not an issue and that his only complaint was his back.  Because this case is being remanded, however, Plaintiff will have an opportunity to muster any evidence he has to establish that his depression is a severe impairment and should be considered in determining whether he is able to work.

11

1                                   IV.

2                              CONCLUSION

3          For these reasons, the Agency's decision denying benefits is

4   reversed and the case is remanded for further proceedings consistent

5   with this opinion.

6          IT IS SO ORDERED.

7          DATED:     December  12  , 2006.

8                                   _____
                                    PATRICK J. WALSH
9                                   UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22   S:\PJW\Cases-Soc Sec\YANG, JOHN 958\Memo Opinion_Ord.wpd

23

24

25

26

27

28

12